IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

GATEKEEPER INC., et al. )
)
Plaintiffs, )
)
v. ) Case No. 1:09cv1326
)
STRATECH SYSTEMS, LTD., et al. )
)
Defendants. )

FILED JUN - 9 2010 CLERK, U.S. DISTRICT COURT ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

At issue on defendants' renewed motion to dismiss for lack of personal jurisdiction is the question, unresolved in this circuit, whether specific personal jurisdiction analysis properly proceeds on a claim-specific basis. Put differently, the question presented is this: in the absence of general personal jurisdiction over a nonresident defendant, must a plaintiff establish specific jurisdiction—statutorily and constitutionally—for each claim alleged on a claim-by-claim basis? By Order dated May 19, 2010, granting the motion in part and denying it in part, this question was answered in the affirmative, and this Memorandum Opinion elucidates the reasons for this ruling. In essence, absent general jurisdiction, specific jurisdiction must be established for each alleged claim; failure to do so for any alleged claim requires nonprivileged dismissal or transfer[1] of that claim.

I.

All of the parties in this diversity breach of contract and tortious interference action are engaged in the business of producing, marketing, and selling under-vehicle bomb detection

---

[1] *See Porter v. Groat*, 840 F.2d 255, 257–58 (4th Cir. 1988).

devices deployed at hotels and government facilities in the Middle East and elsewhere. Plaintiffs, Gatekeeper Inc. ("Gatekeeper") and Christoper A. Millar, are both citizens of Virginia.[2] Defendants, Stratech Systems, Ltd. ("Stratech") and David Chew (collectively "Stratech defendants"), are both citizens of Singapore. The third defendant, Thomas J. Lang, is a citizen of Florida, and an independent contractor who performed consulting services for Stratech and Gatekeeper. Plaintiff Millar, a former Stratech employee, is now a Gatekeeper employee, and Chew is president of Stratech.

This suit arises from acts that allegedly occurred in Singapore in 2009. Specifically, the complaint alleges that Chew—while in Singapore—told Lang, in a telephone conversation and in person, that Millar and Gatekeeper had stolen Stratech's under-vehicle bomb detection technology and thus Gatekeeper did not own the intellectual property rights to the detection devices it was attempting to sell, through Lang, to the Marriott group of hotels in the Middle East and perhaps elsewhere. Plaintiffs allege that Chew's accusations caused Lang to withdraw from his agreement with Gatekeeper to use Gatekeeper's devices in connection with a bid to be submitted to Marriott and to enter instead into an agreement with Stratech to use Stratech's competing devices for this purpose. Alleging the loss of this business as damages, plaintiffs filed this action alleging breach of contract and tortious interference by Chew, Stratech, and Lang. The contract in issue is a settlement agreement—executed in part and performed in part in Virginia—related to previous litigation between Millar, Chew, and Stratech ("the Settlement Agreement"). The Settlement Agreement contains a non-disparagement clause that plaintiffs

---

[2] Gatekeeper is also a citizen of Delaware, where it is incorporated.

allege Stratech defendants violated when Chew told Lang that plaintiffs had stolen Stratech's techology. With respect to the tortious interference claim, Gatekeeper alleges that defendants improperly interfered with its business expectancy with Marriott through tortious acts allegedly committed outside the Commonwealth.

On Stratech defendants' threshold motion, Gatekeeper was dismissed from the breach of contract claim as it was not a party to the Settlement Agreement and thus lacked standing to allege its breach. Moreover, at the argument on summary judgment, plaintiffs' counsel clarified that Millar is not a party to the tortious interference claim. Thus, Millar is the sole plaintiff in the breach of contract claim and Gatekeeper is the sole plaintiff in the tortious interference claim.

Also at the threshold, Stratech defendants filed a motion to dismiss for lack of personal jurisdiction. Plaintiffs, in response, asserted (i) that general jurisdiction exists as a subsidiary of Stratech is incorporated in Virginia, and (ii) that specific personal jurisdiction exists as the Settlement Agreement was executed and performed, in part, in Virginia. This motion was denied on the grounds that although there was no general jurisdiction over Stratech defendants, plaintiffs had made out a *prima facie* case for specific jurisdiction on the basis of the partial execution and performance of the Settlement Agreement in Virginia. *See Gatekeeper Inc. v. Stratech Systems, Ltd.*, No. 1:09cv1326 (E.D. Va. Feb. 19, 2010) (Order). This ruling did not specifically address whether personal jurisdiction was proper over the tortious interference claim in addition to the breach of contract claim. Nonetheless, both claims were allowed to proceed, but Stratech defendants were granted leave to renew their personal jurisdiction motion following discovery.

They have now done so, arguing (i) that their specific contacts with the forum give rise

only to the breach of contract claim, (ii) that summary judgment is appropriate on that breach of contract claim, and (iii) thus, the tortious interference claim should be dismissed as personal jurisdiction no longer gives rise to any active claim in the case. In response, plaintiffs merely renew their arguments that specific jurisdiction exists with respect to the breach of contract claim and general jurisdiction exists on account of Stratech's Virginia subsidiary. Thus, it appears that the parties assume that if one active claim arises directly from Stratech defendants' specific contacts with Virginia, then personal jurisdiction is proper with respect to all other claims in the case, as well. But, for the reasons set forth below, this assumption is legally infirm, and Stratech defendants are appropriately dismissed from the tortious interference claim because that claim does not arise from their contacts with Virginia.[3]

## II.

It is well settled that the constitutional limits of personal jurisdiction require either (i) that the defendant have "systematic and continuous" contacts with the forum state, or (ii) that the defendant's contacts with the forum state "give rise to the liabilities sued on." *International Shoe v. State of Washington*, 326 U.S. 310, 317, 320 (1945). With respect to this second possible avenue for establishing personal jurisdiction—now termed "specific jurisdiction"[4]—controlling

---

[3] At this point, Lang does not benefit from this result even though he may have had no contacts whatever with Virginia. This is so because Lang, proceeding *pro se*, has filed an answer to the complaint without raising the personal jurisdiction issue.

[4] The phrase "specific jurisdiction" appears to have been coined in a 1966 Harvard Law Review article by Professors von Mehren and Trautman, and it first appeared in a Supreme Court opinion in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984) (quoting Arthur T. von Mehren & Donald T. Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv. L. Rev. 1121, 1135 (1966)).

Supreme Court and Fourth Circuit cases strongly suggest, but do not definitively hold, that the analysis must be claim-specific. Put differently, the language of these cases suggests that, where "general jurisdiction" is absent, specific jurisdiction principles require each cause of action to arise from the defendant's contacts with the forum state. Specifically, *International Shoe* refers twice to "causes of action" as the unit of measurement for personal jurisdiction in cases where the defendant's forum contacts give rise to the claims alleged. 326 U.S. at 159. Similarly, the Fourth Circuit has observed that "[t]he minimum contacts test requires the plaintiff to show that the defendant 'purposefully directed his activities at the residents of the forum' and that the plaintiff's cause of action 'arise[s] out of' those activities." *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)) (modification in original). This language, though not dispositive, strongly suggests that the specific jurisdiction analysis should be claim-specific.

Importantly, this reading of *International Shoe* and progeny is not merely consistent with the distinction between specific and general jurisdiction; it is required by that distinction. Specifically, *International Shoe* and its progeny stand clearly for the proposition that a nonresident defendant may be sued for claims *unrelated* to the defendant's contacts with the forum state only where the defendant engages in a regular course of business in that forum state. *See Int'l Shoe*, 326 U.S. at 320; *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 421 (1984); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980). Yet, if specific personal jurisdiction over a defendant with respect to one cause of action were sufficient to allow a plaintiff to allege a series of other claims not arising from the defendant's

forum state contacts—an "ancillary" theory of specific jurisdiction, of sorts—then this important distinction between general and specific jurisdiction would be significantly attenuated, if not eviscerated.

Nor is this an unimportant consequence, as may be aptly demonstrated by a simple hypothetical not too far afield from the case at bar. Assume that a plaintiff sues a diverse, nonresident defendant in a five-count complaint, Count I of which is ultimately meritless. Although ultimately meritless, there is specific jurisdiction over Count I, and the factual allegations related to Count I are adequate to survive a Rule 12(b)(6) motion. In Counts II–V, plaintiff alleges claims that are substantial but that do not arise from the defendant's forum state contacts. Under a theory of ancillary specific jurisdiction, personal jurisdiction would exist over all five claims at the threshold and, moreover, by the time Count I is determined to be meritless on summary judgment, the defendant would likely be deemed to have waived any personal jurisdiction claim with respect to Counts II–V. Thus, a nonresident defendant who does not regularly engage in a course of conduct in the forum state nonetheless would be forced to litigate a case consisting solely of claims that did not arise from his forum state contacts. In other words, a nonresident defendant could be haled into court on a multitude of claims that do not arise from forum state contacts on the basis of a single, unrelated claim that was ultimately dismissed as meritless. It follows, therefore, that to allow this result would be to nullify, in some cases, the fundamental due process protections adopted in *International Shoe* and guarded in its progeny. A rule of ancillary or supplemental personal jurisdiction—as advocated by the parties—cannot be countenanced.

Although the Fourth Circuit has yet to address this issue, the three courts of appeal that have done so have sensibly concluded that specific jurisdiction requires a claim-specific analysis, as a nonresident defendant lacking continuous and systematic contacts with the forum state could not "reasonably anticipate being haled into court" on claims unrelated to the defendant's forum state contacts, and thus haling them into court on those unrelated claims would violate their due process rights. *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (quoting *World-Wide Volkswagen*, 444 U.S. at 297); *see Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274–75 (5th Cir. 2006) (holding that due process requires that specific jurisdiction analysis be claim-specific); *Remick*, 238 F.3d at 255–56 (same); *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 289 (1st Cir. 1999) (same). In other words, these courts have held that specific jurisdiction analysis consists of a determination of whether the defendant's contacts with the forum state give rise to each claim alleged in the complaint, and those claims that do not arise from the defendant's forum state contacts must be dismissed for lack of personal jurisdiction. This claim-specific analysis—necessary to protect a nonresident defendant's due process rights—is appropriately applied here.

### III.

Application of this rule to the case at bar is relatively straightforward. To begin with, there is no basis to reconsider the ruling that general jurisdiction does not exist over Stratech defendants. Specifically, these defendants have no continuous or systematic contacts with the Commonwealth, and the activities of Stratech's Virginia subsidiary should not be imputed to Stratech for personal jurisdiction purposes. *See Saudi v. Northrop Grumman Corp.*, 427 F.3d

271, 276 (4th Cir. 2005) ("[I]t is generally the case that the contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity."). Similarly, there is no basis to reconsider the ruling that specific personal jurisdiction exists over the breach of contract claim, as the contract allegedly breached was partially executed and partially performed in the Commonwealth.

All that remains, therefore, is to consider whether specific jurisdiction exists over the tortious interference claim. On this record, there is clearly no personal jurisdiction over Stratech defendants with respect to the tortious interference claim. None of the acts giving rise to that claim occurred in Virginia. To the contrary, the claim arises solely from statements made by Chew in Singapore to Lang while Lang was in Singapore and in places other than Virginia. It is true, of course, that these alleged acts had foreseeable effects in Virginia—namely, by causing injury to plaintiffs, who are Virginia residents. Yet, the Fourth Circuit has recently and sensibly held that the so-called "effects test" "does not supplant the minimum contacts analysis," and thus "'[a]lthough the place the plaintiff feels the alleged injury is plainly relevant . . . , it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld.'" *Consulting Engineers Corp.*, 561 F.3d at 280–81 (quoting *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 635 (4th Cir. 1997)) (modification in original). Because plaintiffs have not established on this record that Stratech defendants had any contacts with Virginia relevant to the elements of a tortious interference claim, specific jurisdiction does not exist over Stratech defendants with respect to that claim. Accordingly, Stratech defendants must be dismissed from that count.

IV.

For the reasons stated herein, specific jurisdiction is claim-specific and there can be no ancillary or supplemental theory of specific jurisdiction, as application of such a theory would unconstitutionally reach claims that a nonresident defendant would not reasonably expect to result in a court action in the forum state.

Alexandria, Virginia
June 9, 2010

/s/
T. S. Ellis, III
United States District Judge